IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY P., § | | |
| PLAINTIFF, § | | |
| § | | |
| V. § | | CASE NO. 3:19-CV-893-L-BK |
| § | | |
| COMMISSIONER OF THE SOCIAL § | | |
| SECURITY ADMINISTRATION, § | | |
| DEFENDANT. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for supplemental security income and disability insurance benefits under Title II of the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the parties' cross-motions for summary judgment are before the Court for findings and a recommended disposition. Doc 19; Doc. 20. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, Defendant's *Motion for Summary Judgment* should be **DENIED**, and the Commissioner's decision should be **REVERSED AND REMANDED**.

**I.   BACKGROUND**

   **A. Facts**

Plaintiff was 42 years old on the date of the administrative law judge's ("ALJ") decision. Doc. 16-1-1 at 28. She had a high school equivalent education, attended college for two years, and had past relevant work as an office manager, secretary, dispatcher, administrative assistant, and telephone collection clerk. Doc. 16-1 at 28; Doc. 16-1 at 72; Doc. 16-1 at 92-93. Plaintiff alleges that she became disabled in November 2015. Doc. 16-1 at 242.

Plaintiff's relevant medical treatment includes a lengthy history of emergency room visits for headaches/migraines, chest pain, and fibromyalgia. *See, e.g.*, Doc. 16-1 at 400-13, 422-27; Doc. 16-1 at 504-19; Doc. 16-1 at 569-80; Doc. 16-1 at 597-617; Doc. 16-1 at 1010-25; Doc. 16-1 at 1056-58; Doc. 16-1 at 1079-97; Doc. 16-1 at 1165-79. In December 2015, Plaintiff began treatment with neurologist, Dr. M. Eyad Zonjy, M.D., who diagnosed migraine headaches, cervico-occipital neuralgia, fibromyalgia, and major depressive disorder. Doc. 16-1 at 739, 742-45. Plaintiff continued treatment with Dr. Zonjy from January through July 2016 for left arm pain, neck pain radiating into the lateral arm, and fibromyalgia with diffuse body aches that were most intense in her neck and shoulders. Doc. 16-1 at 731, 738; Doc. 16-1 at 846-51, 859-74. Dr. Zonjy's assessments included left radicular arm pain, likely due to cervical degenerative disc disease, and recent deep vein thrombosis in the left upper extremity. Doc. 16-1 at 732-33, 739.

Multiple CT scans and an MRI of Plaintiff's cervical spine revealed degenerative changes and disc bulges at the C5-6 and C6-7 levels causing mild to moderate stenosis. Doc. 16-1 at 552; Doc. 16-1 at 748-50, 877; Doc. 16-1 at 930-31. In August 2016, Plaintiff was hospitalized for five days for, *inter alia*, left shoulder pain, and an MRI revealed a partial tear in the left shoulder rotator cuff. Doc. 16-1 at 1171. The same month, Dr. Zonjy noted that Plaintiff had limited range of motion in the left shoulder with abduction and elevation at less than 70 percent. Doc. 16-1 at 1180-81. Dr. Zonjy performed cervical pain block injections in April, May and June of 2016. Doc. 16-1 at 848.

In December 2016, Plaintiff's request for reconsideration of the denial of her disability application was denied. Doc. 16-1 at 159-62. She subsequently submitted approximately 900 pages of additional medical records to the ALJ. The new evidence documented, *inter alia*,

2

Plaintiff's pain management treatment, beginning with her initial examination in June 2016. Plaintiff exhibited (1) tenderness in the bilateral cervical facets; (2) neck range of motion between ten and 20 degrees in all directions; (3) bilateral paraspinal muscle spasms; (4) motor strength of 4/5 in the bilateral biceps, triceps and brachioradialis; (5) reduced grip strength on the left; and (6) bilateral paresthesia in the C6 and C7 distributions as well as altered sensation. Doc. 16-1 at 1384. Plaintiff was diagnosed with cervicalgia, cervical radiculopathy, fibromyalgia, and chronic pain syndrome. Doc. 16-1 at 1384. The pain was noted to be caused primarily by Plaintiff's cervical facet arthropathy and cervical radiculopathy. Doc. 16-1 at 1374. Plaintiff continued to complain of severe neck and shoulder pain during her next three appointments through November 2016. Doc. 16-1 at 1373, 1375, 1379-89.

The newly submitted records also reflected that Plaintiff returned to Dr. Zonjy from December 2016 through September 2017 with persistent complaints of fibromyalgia, neck pain, and occasional shoulder pain. Doc. 16-1 at 1914-17, 1920-27; Doc. 16-1 at 1929-60. Dr. Zonjy again diagnosed degenerative disc disease of the cervical spine and performed C3-6 medial branch block injections twice in June 2017. Doc. 16-1 at 1937.

**B. The ALJ's Findings**

In May 2018, the ALJ issued his findings, determining that Plaintiff had the severe impairments of cardiac dysrhythmias, fibromyalgia, obesity, migraines, affective disorder, and anxiety disorder. Doc. 16-1 at 19. The ALJ concluded that Plaintiff's degenerative disc disease was a non-severe impairment because it does not "cause more than a minimal limitation in [Plaintiff's] ability to perform basic work activities." Doc. 16-1 at 19. No mention is made of Plaintiff's left shoulder degenerative joint disease or torn left rotator cuff. The ALJ concluded

that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work and could perform as a ticket printer and tagger, a garment sorter, and a retail marker.  Doc. 16-1 at 21, 29.

## II.   APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id*.  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available

4

in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 164 (5th Cir. 2006).

### III.  ANALYSIS

Plaintiff raises a number of arguments, but this case may be readily disposed of without addressing them all. Plaintiff contends that the ALJ erred in finding that her cervical spondylosis/degenerative disc disease impairment was non-severe and in not addressing the

severity of her left shoulder degenerative joint disease and torn rotator cuff. Doc. 19 at 16, 20. The error was prejudicial, Plaintiff asserts, because the ALJ failed to incorporate her associated functional limitations into his RFC assessment, which might have altered his opinion regarding her ability to lift, carry, reach, handle, and the like. Doc. 19 at 20-21.

Defendant argues that the ALJ noted Plaintiff's physical examinations generally showed intact strength and range of motion, and her mere diagnoses do not speak to the severity of her impairments. Doc. 20 at 8-9. Defendant further points to the improvement in Plaintiff's fibromyalgia and headache pain level with medication. Doc. 20 at 9-10.

At the second stage of the sequential analysis, an ALJ must decide whether an alleged impairment is an impairment at all within the specialized meaning of that term − if it is not, there is no error in failing thereafter to mention or analyze it further. *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (per curiam). Impairments must be established by "objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. An impairment can then "be considered as 'not severe' only if it is a slight abnormality having such minimal effect on an individual that it *would not be expected to interfere* with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (emphasis added).

If the ALJ proceeds past step two of the sequential evaluation process and includes a discussion of the impairment omitted at step two, it is presumed that the ALJ found that a severe impairment existed unless the ALJ states otherwise. In other words, the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis because those stages are premised on a finding, at the second

6

step of the analysis, that the impairments were severe. *See Reyes v. Sullivan*, 915 F.2d 151, 154 & n.1 (5th Cir. 1990) (per curiam).

This is to be distinguished from the situation where the ALJ applies an incorrect severity standard at step two, explicitly rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments. *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000) (reversing and remanding where the ALJ had applied the incorrect severity standard, found the claimant's mental impairment not severe, and proceeded through the remaining analysis without further considering it); *Reyes*, 915 F.2d at 154 & n.1 (court could infer that the ALJ found the claimant's hypertension was a severe impairment because the ALJ found at step four that the hypertension did not prevent the claimant from performing his past relevant work).

As Plaintiff points out, the ALJ failed to mention her documented left shoulder diagnoses altogether. Further, the ALJ then set forth an incorrect definition of "severity," stating that:

[a]n impairment or combination of impairments is 'severe' . . . if it *significantly limits an individual's ability to perform basic work activities*. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

Doc. 16-1 at 44 (emphasis added); *cf. Stone*, 752 F.2d at 1101.

After applying the wrong severity standard, the ALJ did not address Plaintiff's cervical degenerative disc disease or left shoulder limitations at the later stages of the sequential analysis. This was error in light of the medical records evidencing these issues. *See Loza*, 219 F.3d at 399.

Of course, remand is not required if the error was harmless. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Here, however, it is not. The ALJ's decision might have been different

7

if he had considered those impairments under the proper standard and assessed the effect they could have on her ability to work. *See Reyes*, 915 F.2d at 154 & n.1; *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam) (stating that remand is required only where there is a "realistic possibility" that the ALJ would have reached a different conclusion absent the error). Accordingly, reversal and remand is warranted.[1]

### IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 19, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 20, be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings.

**SO RECOMMENDED** on July 30, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[1] While reversal is warranted on this basis alone, the Court writes briefly to point out another error Plaintiff raises. As noted above, Plaintiff submitted roughly 900 pages of medical records that were never reviewed by a medical doctor but were relied on by the ALJ in his opinion. Doc. 16-1 at 161-62. ALJs, however, may not "play doctor" and render their own interpretations of medical evidence in assessing a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). To avoid this problem, an ALJ generally should request a medical source statement describing the types of work that a claimant can still perform. *Id.* That is the appropriate course of action on remand.

8

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).